BENJAMIN B. WAGNER
United States Attorney
AUDREY B. HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

**FILED**

SEP 1 0 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

**SEALED**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15 - CR - 0190 GEB |
|---|---|
| Plaintiff, | VIOLATIONS: 18 U.S.C. § 371 – Conspiracy; 18 U.S.C. § 493 - Bonds and Obligations of Certain Lending Agencies (15 Counts); 18 U.S.C. § 1344(1) - Bank Fraud (23 Counts); 18 U.S.C. § 1957 – Monetary Transactions in Criminally Derived Property (3 Counts); and 18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 18.U.S.C. § 492 and 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| v. | |
| JOHN MICHAEL DICHIARA, JAMES CHRISTOPHER CASTLE, REMUS ALAN KIRKPATRICK, LAURA MARIE PEZZI, GEORGE B. LARSEN, LARRY TODT, and MICHAEL ROMANO, | |
| Defendants. | |

INDICTMENT

COUNT ONE: [18 U.S.C. § 371 – Conspiracy]

The Grand Jury charges:

JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE,
REMUS ALAN KIRKPATRICK,
LAURA MARIE PEZZI,
GEORGE B. LARSEN,
LARRY TODT, and
MICHAEL ROMANO,

defendants herein, as follows:

INDICTMENT

1

1

## I.    INTRODUCTION

2      At all times relevant to this indictment:

3      1.    The following entities were financial institutions as defined in Title 18 United States

4   Code, Section 20: Countrywide, Washington Mutual, Fidelity Home Mortgage Company, America's

5   Broker Conduit, M&T Mortgage Corporation, First Choice Funding, Wells Fargo (formerly known as

6   World Savings Bank), HSBC Bank, World Savings Bank, Greenpoint Mortgage Funding, Valley Vista

7   Mortgage, SCME Mortgage Bankers, Meridias Capital, Aegis Wholesale, JP Morgan Chase, Guild

8   Mortgage, America's Wholesale Lender, United Pacific Mortgage, Wachovia Mortgage FSB, Paul

9   Financial LLC, United Capital Funding Inc., FNMA/Freddit, Bank of America, Provident, Duxford

10  Financial, OneWest Bank, IndyMac Bank, Deutsche Bank, Bank of NY Mellon, Aurora Loan Services,

11  Quality Loan Service, Aldea Homes Inc., Nationstar Mortgage, Fannie Mae, US Bank, Ally Bank, RBS

12  Citizens, Charter One Bank, Citibank, GMAC, Encore Credit, Liberty American Mortgage, PNC Bank

13  (collectively "financial institutions").

14     2.    The defendant JOHN MICHAEL DICHIARA resided in Nevada County, in the State and

15  Eastern District of California.

16     3.    DICHIARA named himself the archbishop of Shon-te-East-a, Walks With Spirit ("Shon-

17  te-East"), a registered Utah corporation, with a business address at 228 Commercial Street #464 in

18  Nevada City, California and elsewhere.  DICHIARA claimed that, as archbishop, he helped individuals

19  spiritually by alleviating them from personal debt, namely, their mortgage loans.

20     4.    DICHIARA was also the self-named archbishop of the Pillow Foundation, a registered

21  Utah corporation, with a business address in Reno, Nevada.  Both Shon-te-East and Pillow Foundation

22  claimed to be tax exempt religious organizations under Section 508 of Title 26 of the United States Code

23  (i.e., the Internal Revenue Code).  Neither Shon-te-East nor Pillow Foundation had a physical worship

24  location.

25     5.    DICHIARA was the signatory on a Wells Fargo bank account located in the State and

26  Eastern District of California, under the name God's Will Ministries Through Jesus Christ.  DICHIARA

27  used this account to receive proceeds of the conspiracy.  DICHIARA was the signatory on a Bank of

28  America bank account located in the State and Eastern District of California, under the name Penn

1  Valley, also used to receive proceeds of the conspiracy.

2      6.     The defendant JAMES CHRISTOPHER CASTLE was a co-owner of CCTT Group, an
3  unincorporated company dedicated to the "administrative default process" or "mortgage elimination
4  program."

5      7.     CCTT Group maintained a bank account, named CCTT Legal, at Bank of America in
6  South Lake Tahoe, California, in the State and Eastern District of California, for which CASTLE was a
7  signatory. CASTLE used this account to receive and disburse funds in furtherance of conspiracy.

8      8.     CASTLE was also the owner of Oreplex International, LLC, held out as a private lending
9  company. Oreplex maintained a bank account at Bank of America, for which CASTLE was a signatory.
10 CASTLE used this account to receive and disburse funds in furtherance of the conspiracy.

11     9.     CASTLE was also a co-owner of CJT Financial Group, also held out as a private lending
12 company. CJT Financial Group maintained a bank account at Bank of America, located in South Lake
13 Tahoe, in the State and Eastern District of California, for which CASTLE was a signatory. CASTLE
14 used this account to receive and disburse funds in furtherance of the conspiracy.

15     10.    The defendant REMUS ALAN KIRKPATRICK was the owner of Golden Hills Trust,
16 held out as a private lending company. Golden Hills Trust maintained a business bank account at Bank
17 of America, in the State and Eastern District of California, for which KIRKPATRICK was a signatory.
18 KIRKPATRICK used this account to receive and disburse funds in furtherance of the conspiracy.
19 Golden Hills Trust also maintained a bank account at Wells Fargo Bank, for which KIRKPATRICK was
20 a signatory. KIRKPATRICK used this account to receive and disburse funds in furtherance of the
21 conspiracy.

22     11.    The defendant LAURA MARIE PEZZI was a resident of the State and Eastern District of
23 California. PEZZI sold her own house through the "mortgage elimination program," and then began to
24 work out of her home as an administrator for KIRKPATRICK, managing the documents and document
25 templates used in furtherance of the conspiracy.

26     12.    The defendant GEORGE B. LARSEN was the owner of GJZ Group, held out as a private
27 lender. GJZ Group maintained a bank account at Bank of America, for which Larsen was a signatory.
28 Larsen used this account to receive and disburse funds in furtherance of the conspiracy.

INDICTMENT                                   3

1    13.    The defendant LARRY TODT was the owner of Envirotech Systems, LLC, held out as a

2  private lending company.  Envirotech Systems maintained a bank account at Bank of America, for

3  which TODT was a signatory.  TODT used this account to receive and disburse funds in furtherance of

4  the conspiracy.

5    14.    The defendant MICHAEL ROMANO was the holder of an expired real estate broker's

6  license with the California Department of Real Estate.  He recruited homeowners into the "mortgage

7  elimination program" and attempted to put his own residence through the program.

8                                **II.    THE CONSPIRACY**

9    15.    Beginning on or about April 22, 2010, and continuing through at least on or about

10  November 18, 2011, in the State and Eastern District of California and elsewhere, the defendants did

11  knowingly combine, conspire and agree with each other, and with others known and unknown to the

12  Grand Jury, to commit offenses against the United States of America, that is the false making of lending

13  association writings, in violation of Title 18, United States Code, Section 493, and bank fraud, in

14  violation of Title 18, United States Code Section 1344(1).

15                              **III.    MANNER AND MEANS**

16          The manner and means of the conspiracy included the following:

17    16.    The defendants attempted to and did perpetrate a scheme through an "administrative

18  default procedure" or "mortgage elimination program" in which they recruited distressed homeowners

19  with the promise of relief from foreclosure and the protection of a spiritual or charitable organization.

20  The defendants recorded or caused to be recorded sham deeds of trust on the properties toward the end

21  of deceiving escrow agents into paying defendants as the primary lienholders.  The defendants caused to

22  be falsely made and recorded deeds of reconveyance from mortgage lenders, incorrectly indicating that

23  the homeowner's mortgage loan had been repaid.  Defendants then caused the properties to be short-

24  sold.  The defendants sought to and did enrich themselves by receipt of the short sale proceeds.

25    17.    Between in or about April 2010 and in or about November 2011, defendants worked to

26  identify distressed homeowners who fit a certain profile: property value less than the amount owed to

27  the mortgage lender, and in danger of foreclosure, but foreclosure not quite imminent.

28    18.    A key component of the scheme was that homeowners were not given the option of

INDICTMENT                                        4

1   remaining in their homes. The defendants required that each homeowner agree to sell the home to
2   participate in their fraudulent "mortgage elimination program."

3       19.   Homeowners were recruited at seminars held in Roseville, California; Petaluma,
4   California; and elsewhere, in which CASTLE and DICHIARA explained the "administrative default
5   procedure" or "mortgage elimination program." DICHIARA was introduced as the archbishop of the
6   Shon-te-East church. CASTLE presented the mechanics of the "mortgage elimination program."

7       20.   ROMANO and others known and unknown to the Grand Jury also recruited homeowners
8   via word-of-mouth.

9       21.   Homeowners were enticed with the promise of three things: an opportunity to avoid
10   foreclosure and the resulting negative impact on their credit; a possible tax write-off when the home was
11   ostensibly donated to the church; and some percentage of the sales proceeds, typically 20% of the short
12   sale profit.

13       22.   Homeowners committing to the program typically signed a contract with the individual
14   who recruited them into the program and CASTLE. Homeowners also typically signed a membership
15   application into the Shon-te-East church or the Pillow Foundation, among other documents.

16       23.   DICHIARA and others typically required the homeowners to assign or convey their
17   homes to Shon-te-East or the Pillow Foundation. This assignment gave the homeowners the impression
18   they were making a charitable donation to a religious organization, toward the possible end of taking a
19   tax deduction. The assignment also gave the defendants the assurance that once the defendants had
20   fraudulently filed documents to purport to eliminate the preexisting lien(s) on the house, the homeowner
21   would not sell the house to a third party and keep the proceeds. In some instances, the homeowners
22   actually recorded a quitclaim deed (or equivalent document, depending on jurisdiction), deeding their
23   interest in the house to Shon-te-East or Pillow Foundation. In other instances, the defendants simply
24   maintained a copy of a notarized, fully executed assignment, the purpose of which was to give the
25   homeowners the impression that Shon-te-East or Pillow Foundation now held the property. In certain
26   instances, certain defendants also gave homeowners the misimpression that the quitclaim or assignment
27   transferred to Shon-te-East or Pillow Foundation legal responsibility over the mortgage(s) on the
28   property. In reality, responsibility to repay the loan(s) to the financial institution(s) remained with the

1   homeowners at all times.

2       24.   In some instances, certain defendants directed homeowners to cease any payments to the
3   financial institution(s) once the homeowners were enrolled in the program.

4       25.   DICHIARA, TODT, and others known and unknown to the Grand Jury then caused
5   correspondence to be sent to the financial institution holding the mortgage. This correspondence was
6   typically titled "Notice of Right to Cancel," "Notice of Revocation of Power of Attorney," and "Notice
7   of Removal." The correspondence generally purported to challenge the validity of the home loan.
8   Certain co-conspirators known and unknown to the Grand Jury notarized this correspondence, and
9   certified that it was sent to the financial institutions via U.S. mail.

10      26.   In many instances, the financial institution holding the mortgage would reply, indicating
11  that the correspondence had been received, reviewed, and the financial institution had determined that
12  the loan was still valid, and the homeowner continued to be required to make monthly mortgage
13  payments.

14      27.   Regardless of the content of the reply by the financial institution, DICHIARA in many
15  instances created a "3rd Party Verified Affidavit of Nonresponse," claiming that the response of the
16  financial institution was somehow unsatisfactory and there was some consequence thereto.

17      28.   Certain defendants then caused the creation and recording of a sham lien on the property.
18  They identified a fictitious lender— typically CCTT, Golden Hills Trust, Envirotech, or GJZ—as the
19  new lender on the property. They selected an arbitrary amount to fill in for the bogus new loan, always
20  higher than the original, real loan amount, to give the illusion that the property had been refinanced. But
21  in fact, the bogus lien did not secure any real loan and the homeowners understood that they owed no
22  money to the fictitious lenders. Certain defendants caused the recording of the fraudulent deeds of trust
23  reflecting these bogus liens at the office of the county recorder.

24      29.   Certain defendants were then responsible for the fraudulent reconveyance of the property
25  from the financial institution(s) that actually held the mortgage. As part of the conspiracy, PEZZI and
26  others created a fraudulent deed of reconveyance (or equivalent document, depending on jurisdiction).
27  This document purported to extinguish the real lending institution's security interest in the subject
28  property. PEZZI, LARSEN, TODT, and others known and unknown to the Grand Jury identified a real,

INDICTMENT                                    6

1  trusted person to sign the fraudulent deed of reconveyance as if the trusted person was an authorized
2  representative of the financial institution that actually held the mortgage. The fraudulent deeds of
3  reconveyance were then recorded at the county recorder's office. The fraudulent deeds were sent to the
4  purported beneficiary of the reconveyance from the recorder's office via U.S. mail.

5      30.    The financial institutions were unaware that the fraudulent deeds of reconveyance had
6  been recorded, because the mailing notification in most instances went directly to the homeowner. In
7  addition, on some occasions, homeowners were instructed to or required to sign a confidentiality
8  agreement, keeping secret the mechanics of the "mortgage elimination program."

9      31.    In many instances, the financial institution(s) that actually held the mortgage recorded a
10  notice of default, marking the beginning of the foreclosure process.

11      32.    In many instances, certain defendants, made aware of the issuance of a notice of default,
12  caused to be recorded a fraudulent Notice of Rescission of Notice of Default. As with the fraudulent
13  deeds of reconveyance, the notices of rescission of default were signed by real persons known to the
14  defendants who purported to be "authorized representatives" of the financial institution(s) that were
15  actually in the process of foreclosing on the home. These notices of rescission were recorded and
16  typically sent to the homeowner via U.S. mail. PEZZI maintained copies of the notices in her property
17  files.

18      33.    Certain defendants then located or caused others to locate buyers for the homes. In most
19  instances, they looked for buyers who were able to purchase with cash, speeding the sale and reducing
20  the scrutiny of the sale by another lender.

21      34.    Once in escrow, certain defendants, holding themselves out as CCTT, GJZ, Envirotech,
22  Golden Hills Trust, and other fictitious lenders, acted as the lender who was purportedly still owed
23  money, and typically sent to the escrow agent a demand letter approving the short sale of the property.
24  The fictitious lender approved a short sale amount that was typically just a fraction of the bogus loan
25  amount stated in the fraudulent deed of trust recorded just a few months earlier.

26      35.    The result of the recorded fraudulent deeds of trust, fraudulent deeds of reconveyance,
27  and fraudulent notices of rescission of notice of default was to deceive the escrow agent and to make it
28  appear as though CCTT, GJZ Trust, Envirotech, Golden Hills Trust, and other fictitious lenders were the

1 primary lienholders on the property and the legitimate lenders had no valid security interest in the

2 property and did not need to be paid at closing. Escrow agents therefore caused payments to CCTT,

3 GJZ Trust, Envirotech, Golden Hills Trust, and other fictitious lenders as part of these closings.

4      36.     KIRKPATRICK, CASTLE, and LARSEN and others known and unknown to the Grand

5 Jury received funds from the short-sale closings as the fictitious lender.

6      37.     KIRKPATRICK, TODT, DICHIARA, LARSEN and others then divided the sales

7 proceeds by distributing a share to each individual due a percentage per prior agreement with the

8 homeowner and others known and unknown to the Grand Jury.

9      38.     The defendants employed different variations of the "mortgage remedy program." On at

10 least one occasion, the homeowner quitclaimed the property to Shon-te-East, and DICHIARA then sold

11 the property in the short sale. On other occasions, Shon-te-East or Pillow Foundation quitclaimed the

12 property back to the homeowner, and the homeowner then sold the property at the direction of the

13 defendants. On other occasions, the assignment to Shon-te-East or Pillow Foundation was not recorded,

14 and the homeowner sold the property in the short sale arranged by certain defendants. On other

15 occasions, certain defendants caused the transfer of the property interest of the homeowners into family

16 trusts, with DICHIARA and others known and unknown to the Grand Jury as trustee. But every time,

17 the scheme was executed by using a fraudulent deed of reconveyance that purported to extinguish the

18 real lender's security interest in the real property.

19      39.     The real liens on the property by the financial institutions were never satisfied by the

20 fraudulent short sale of the home. In many instances, the financial institutions continued the foreclosure

21 process. In many instances, the buyers of the homes became aware of the clouded title to the home for

22 the first time when the financial institutions attempted to foreclose on the properties after the fraudulent

23 short sale.

24      40.     In all, the defendants sold approximately 37 properties in furtherance of the conspiracy.

25 The sale proceeds totaled in excess of $8 million. They put an additional approximately 97 properties

26 through some phase of the "mortgage elimination program," toward the end of eventual sale. The stages

27 of completion ranged from simply filling out Shon-te-East or Pillow Foundation membership

28 documents, to the recording of one or more of the essential fraud documents (deed of trust, deed of

1   reconveyance, notice of rescission of default), to the seeking of a buyer in the short sale. The legitimate
2   loans the defendants sought to fraudulently extinguish totaled in excess of $60 million.

## IV.    OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, the defendants, and others known
and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among
others, within the Eastern District of California and elsewhere:

### A. 319 Marsalla Drive, Folsom, California

41.    In or about October 2010, PEZZI told Homeowner One, the owner of 319 Marsalla
Drive, Folsom, California, located in the State and Eastern District of California, that through the
"mortgage remedy process," Homeowner One's mortgage lender would be removed from title, and then
the house would be sold.

42.    On or about December 12, 2010, CASTLE and PEZZI signed a contract with
Homeowner One, agreeing to the terms of the arrangement. On or about December 29, 2010,
DICHIARA caused Homeowner One to submit a membership application to the Pillow Foundation.

43.    On or about December 22, 2010, KIRKPATRICK, CASTLE, DICHIARA and PEZZI
caused a bogus Deed of Trust to be recorded at the Sacramento County Recorder's Office, in the State
and Eastern District of California, falsely indicating that lender Golden Hills Trust loaned Homeowner
One $325,000, secured against the Marsalla Drive property. Homeowner One did not actually owe
Golden Hills Trust $325,000. The loan indicated in the Deed of Trust was fictitious. Homeowner One
never paid any mortgage or loan payments to Golden Hills Trust.

44.    KIRKPATRICK, CASTLE, DICHIARA, PEZZI and others known and unknown to the
Grand Jury falsely made or caused to be falsely made a Substitution of Trustee and Deed of
Reconveyance, which was then recorded at the Sacramento County Recorder's Office on or about
February 15, 2011. A person known to the Grand Jury and referred to herein as Associate One, signed
the document as an "authorized representative" of Wells Fargo Bank, formerly known as World Savings
Bank. The document purported to reconvey to Homeowner One all of the bank's interest in the
property, falsely stating that the mortgage debt had been fully paid. Associate One did not work for and
was not an authorized representative of Wells Fargo. Wells Fargo did not reconvey its interest in the

1    property to Homeowner One.

2        45.     On or about March 1, 2011, PEZZI signed and caused to be recorded a second
3    Substitution of Trustee and Deed of Reconveyance at the Sacramento County Recorder's Office. In the
4    document, PEZZI, an "authorized representative" of Wells Fargo Bank, formerly known as World
5    Savings Bank, purported to reconvey to Homeowner One all of the bank's interest in the property,
6    falsely stating that Homeowner One's home equity line of credit ("HELOC") had been fully paid.PEZZI
7    did not work for and was not an authorized representative of Wells Fargo. Wells Fargo did not reconvey
8    its interest in the property to Homeowner One.

9        46.     On or about June 1, 2011, KIRKPATRICK signed and caused to be recorded a third
10   Substitution of Trust and Deed of Reconveyance at the Sacramento County Recorder's Office. In the
11   document, KIRKPATRICK purported to substitute Golden Hills Trust as the trustee based on the Deed
12   of Trust signed by Homeowner One.

13       47.     In or about May 2011, KIRKPATRICK and CASTLE arranged for the sale of the
14   property, directing Homeowner One to enter into a residential short sale purchase agreement with a
15   buyer who agreed to buy Marsalla Drive for approximately $187,000.

16       48.     On or about May 26, 2011, KIRKPATRICK submitted a payoff demand to the escrow
17   agent instructing that (1) escrow must close before June 1, 2011; (2) the gross sales price was $187,000
18   and Golden Hills Trust would accept no less than $173,706.30; (3) the borrowers/sellers were not to
19   receive any cash funds from the sale transaction; and (4) the sale proceeds were to be wired into the
20   business account of Golden Hills Trust following the close of escrow.

21       49.     KIRKPATRICK provided wire instructions directing that the proceeds be wired directly
22   to Golden Hills Trust's Bank of America bank account located in South Lake Tahoe, California, in the
23   State and Eastern District of California. At the close of escrow, the wire in the amount of approximately
24   $173,824.55 was sent to the Golden Hills Group Bank of America bank account in South Lake Tahoe,
25   California on May 31, 2011.

26       50.     On or about June 3, 2011, KIRKPATRICK transferred approximately $59,696.71 out of
27   the Golden Hills Group Bank of America bank account to the CCTT Group Bank of America bank
28   account.

INDICTMENT                                              10

1    51.    On or about June 6, 2011, there was a $17,100 transfer from the CCTT Group Bank of

2  America bank account into a Bank of America bank account named IOC Group, to the benefit of

3  CASTLE and DICHIARA.

4         **B.    28432 Avenida Placida, San Juan Capistrano, California**

5    52.    On or about March 22, 2010, CASTLE and TODT signed a contract with Homeowner

6  Two, the owner of a home located at 28432 Avenida Placida in San Juan Capistrano, California,

7  enrolling him in the "administrative default" program.

8    53.    On or about April 16, 2010, TODT, CASTLE, DICHIARA, and others known and

9  unknown to the Grand Jury caused Homeowner Two to sign a Deed of Trust, which was recorded at the

10  Orange County Recorder's Office. The Deed of Trust falsely indicated that Homeowner Two owed

11  CCTT Group $1,100,000, secured against the Avenida Placida property.

12    54.    On or about April 21, 2010, TODT signed and recorded a Notice of Rescission of Notice

13  of Default, purporting to cancel a notice of default earlier recorded by Washington Mutual. The

14  recorded Notice of Rescission was sent via U.S. mail, purportedly to the California Reconveyance

15  Company, but to the attention of TODT. TODT was not an "Authorized Representative" of the

16  California Reconveyance Company, and was not authorized to rescind the notice of default.

17    55.    On or about April 28, 2010, TODT, CASTLE and DICHIARA caused to be falsely made

18  and recorded a Substitution of Trustee and Deed of Reconveyance, purporting to reconvey JP Morgan

19  Chase's interest in the property to Homeowner Two. That document stated that the indebtedness had

20  been fully paid. The Deed of Reconveyance was signed by Associate Two as an "Authorized

21  Representative" of JP Morgan Chase. Associate Two did not work for and was not an authorized

22  representative of JP Morgan Chase. JP Morgan Chase did not reconvey its interest in the property to

23  Homeowner Two.

24    56.    On or about July 6, 2010, DICHIARA caused Homeowner Two to assign his interest in

25  28432 Avenida Placida to Shon-te-East and DICHIARA. The Assignment was recorded at the Orange

26  County Recorder's Office. A copy of the recorded Assignment was mailed to DICHIARA at the Shon-

27  te-East business address in the State and Eastern District of California.

28    57.    On or about July 6, 2010, DICHIARA caused Homeowner Two to sign and record at the

1  Orange County Recorder's Office a Quit Claim Deed stating that he quitclaimed his interest in 28432

2  Avenida Placida to Shon-te-East. A copy of the Quit Claim Deed was mailed to DICHIARA at the

3  Shon-te-East business address in the State and Eastern District of California.

4        58.     DICHIARA, TODT and CASTLE then caused the sale of the property.

5        59.     On or about August 25, 2010, DICHIARA, as the new "owner" of the Avenida Placida

6  property, sent a letter to the escrow company indicating that the property was to be sold to the buyer for

7  $900,000.

8        60.     On or about September 1, 2010, CASTLE sent a demand letter to the escrow company

9  requesting $765,000 via wire transfer to the CCTT Group bank account.

10       61.     On or about September 3, 2010, a $769,558.13 wire transfer was deposited into a CCTT

11  Group Bank of America Bank account.

12       **C.    1928 Sansone Drive, Santa Rosa, California**

13       62.     In or about May 2010, CASTLE and LARSEN convinced Homeowner Three, owner of a

14  home located at 1928 Sansone Drive in Santa Rosa, California to enroll in the "mortgage remedy

15  program."

16       63.     On or about May 24, 2010, LARSEN, CASTLE, and DICHIARA caused Homeowner

17  Three to sign and record a Deed of Trust falsely indicating that Homeowner Three owed GJZ Group

18  $425,000, secured against the Sansone Drive property. In actuality, LARSEN and others known and

19  unknown to the Grand Jury told Homeowner Three that the loan was not real, and he would not have to

20  pay any portion of it.

21       64.     On or about June 2, 2010, DICHIARA caused Homeowner Three to sign and record a

22  Quit Claim Deed, transferring his interest in the property to Shon-te-East. The Quit Claim Deed was

23  recorded in Sonoma County, and sent via U.S. mail to the business address for DICHIARA in the State

24  and Eastern District of California.

25       65.     On or about October 1, 2010, DICHIARA, CASTLE and LARSEN caused a Substitution

26  of Trustee and Deed of Reconveyance to be recorded, purporting to reconvey Bank of America's interest

27  in the Sansone Drive property as the debt had been fully repaid. The Deed of Reconveyance was signed

28  by Associate Three, an "Authorized Representative." Associate Three did not work for Bank of

INDICTMENT                                    12

1  America and was not an authorized representative. Bank of America did not reconvey its interest in the
2  property to Homeowner Three.

3      66.     On or about October 1, 2010, DICHIARA, CASTLE and LARSEN caused a second
4  Substitution of Trustee and Deed of Reconveyance to be recorded, purporting to reconvey Chase Home
5  Finance's interest in the Sansone Drive property as the debt had been fully repaid. The Deed of
6  Reconveyance was signed by Associate Four, an "Authorized Representative." Associate Four did not
7  work for Chase and was not an authorized representative. Chase did not reconvey its interest in the
8  property to Homeowner Three.

9      67.     On or about December 1, 2010, DICHIARA signed and recorded a Quit Claim Deed,
10  returning the interest in the property to Homeowner Three.

11      68.     DICHIARA, CASTLE and LARSEN then caused the sale of the property.

12      69.     On or about March 22, 2011, LARSEN sent to the escrow company a demand letter
13  requesting net proceeds to GJZ Group of no less than $90,000, to be wired into the GJZ bank account.

14      70.     On or about April 11, 2011, the escrow company sent $97,492.99 via wire transfer to the
15  GJZ Group bank account.

16      **D.     2126 Painted Pony Drive, Somerset, California**

17      71.     In or about November, 2010, ROMANO and another person known to the Grand Jury
18  referred to herein as Homeowner Four, owned a single family residence located at 2162 Painted Pony
19  Drive, Somerset, California, in the State and Eastern District of California, signed the membership
20  contract enrolling them in the "mortgage elimination program." CASTLE and PEZZI signed as the
21  representatives of the CCTT Group. ROMANO and Homeowner Five also submitted an application for
22  membership to the Pillow Foundation.

23      72.     ROMANO signed and had notarized a Quit Claim Deed, purporting to quitclaim his
24  interest in the property to the Pillow Foundation. The recorded document was to be mailed to "trustee"
25  DICHIARA.

26      73.     On or about November 17, 2010, ROMANO, DICHIARA, CASTLE, KIRKPATRICK,
27  and PEZZI caused to be recorded a Deed of Trust at the El Dorado County Recorder's Office, in the
28  State and Eastern District of California, indicating that lender Golden Hills Trust loaned him $375,000,

1   secured against the Painted Pony Road property. ROMANO did not actually owe Golden Hills Trust

2   $375,000. The loan indicated in the deed of trust was fictitious. ROMANO never paid any mortgage or

3   loan payments to Golden Hills Trust.

4       74.     On or about February 14, 2011, ROMANO, DICHIARA, KIRKPATRICK, CASTLE,

5   and PEZZI caused to be falsely made and recorded a Substitution of Trustee at the El Dorado County

6   Recorder's Office. On the document, Associate One, now purporting to be an "authorized

7   representative" of Mortgage Electronic Registration Systems, Inc., purports to substitute the trustee on

8   the original, real Deed of Trust and put in its place U.S. Bank NA. Associate One did not work for and

9   was not an authorized representative of Mortgage Electronic Registration Systems. Mortgage Electronic

10  Registration Systems did not substitute U.S. Bank as trustee on the original, real deed of trust.

11      75.     On or about February 14, 2011, ROMANO, DICHIARA, KIRKPATRICK, CASTLE,

12  and PEZZI caused to be falsely made and recorded a Full Reconveyance at the El Dorado County

13  Recorder's Office. In the document, Associate Five, an "authorized representative" of U.S. Bank NA,

14  purports to reconvey to ROMANO and Homeowner Five all of its interest in the property. Associate

15  Five did not work for and was not an authorized representative of U.S. Bank NA. U.S. Bank NA did not

16  reconvey any interest in the property to ROMANO.

17      76.     On or about March 4, 2011, ROMANO, DICHIARA, KIRKPATRICK, CASTLE, and

18  PEZZI caused to be falsely made and recorded a Notice of Rescission of Notice of Default and Election

19  to Sell under Deed of Trust at the El Dorado County Recorder's Office, purporting to cancel a real

20  notice of default that had been filed by the real lender. The document is signed by Associate Seven, an

21  "authorized representative" of National Default Servicing Corporation. Associate Seven did not work

22  for and was not an authorized representative of National Default Servicing Corporation. National

23  Default Servicing Corporation did not cancel the notice of default.

24      77.     The fraudulent Reconveyance was sent by the Recorder's Office, via U.S. mail, to PEZZI

25  purportedly as a representative of the National Default Servicing Corporation. PEZZI was not a

26  representative of, nor did she work for, the National Default Servicing Corporation.

27      All in violation of Title 18, United States Code, Sections 371, 493, and 1344.

28

COUNTS TWO THROUGH SIXTEEN: [18 U.S.C. § 493 – Bonds and Obligations of Certain Lending Agencies]

The Grand Jury further charges:

JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE,
REMUS ALAN KIRKPATRICK,
LAURA MARIE PEZZI, and
MICHAEL ROMANO

defendants herein, as follows:

78.     The allegations set forth in Count One at Paragraphs 1 through 14 and Paragraphs 16 through 40 are incorporated by reference as though set forth herein.

79.     The following entities are and were at all relevant times, lending associations authorized or acting under the laws of the United States, mortgage loan corporations, insured credit unions, or intermediate credit banks:  Wells Fargo, N.A., formerly known as World Savings Bank; M&T Bank; Charter One Bank; Washington Mutual; Fidelity; Countrywide; Travis Credit Union; Chase; Liberty America Mortgage;  American Mortgage Partners; and U.S. Bank.

80.     On or about each date set forth below, in the State and Eastern District of California, and elsewhere, the defendants identified and charged as set forth below, did falsely make the following writings in imitation of a writing issued by a land bank, intermediate credit bank, insured credit union, lending, mortgage, insurance, credit or savings and loan corporation or association; and did pass and utter the following writings knowing them to have been falsely made:

| Count | Property | False Writings | Place of Filing | Date | Defendant(s) |
|---|---|---|---|---|---|
| 2 | 3182 Shawnee Court, Cameron Park, California | Substitution of Trustee and Deed of Reconveyance | El Dorado County | December 3, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 3 | 3182 Shawnee Court, Cameron Park, California | Substitution of Trustee and Deed of Reconveyance | El Dorado County | December 2, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 4 | 319 Marsalla Drive, Sacramento, California | Substitution of Trustee and Deed of Reconveyance | Sacramento County | February 15, 2011 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |

| | | | | | |
|---|---|---|---|---|---|
| 5 | 319 Marsalla Drive, Sacramento, California | Substitution of Trustee and Deed of Reconveyance | Sacramento County | March 1, 2011 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 6 | 6303 Green Garden Drive, Bakersfield, California | Substitution of Trustee and Deed of Reconveyance | Kern County | October 4, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 7 | 6303 Green Garden Drive, Bakersfield, California | Substitution of Trustee and Deed of Reconveyance | Kern County | September 30, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 8 | 1420 Roaring Camp Court, Plumas Lake, California | Substitution of Trustee and Deed of Reconveyance | Yuba County | December 22, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 9 | 7593 Almondwood Avenue, Citrus Heights, California | Substitution of Trustee and Deed of Reconveyance | Sacramento County | October 20, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 10 | 5479 Dunlay Drive, Sacramento, California | Substitution of Trustee and Deed of Reconveyance | Sacramento County | September 21, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 11 | 7233 Cromwell Drive, Sacramento, California | Notice of Rescission of Notice of Default | Sacramento | October 14, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 12 | 7233 Cromwell Drive, Sacramento, California | Substitution of Trustee and Deed of Reconveyance | Sacramento | October 14, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 13 | 7233 Cromwell Drive, Sacramento, California | Substitution of Trustee and Deed of Reconveyance | Sacramento | October 15, 2010 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI |
| 14 | 2162 Painted Pony Road, Somerset, California | Substitution of Trustee | El Dorado County | February 14, 2011 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI, ROMANO |
| 15 | 2162 Painted Pony Road, Somerset, California | Full Reconveyance | El Dorado County | February 14, 2011 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI, ROMANO |

| | 16 | 2162 Painted Pony Road, Somerset, California | Notice of Rescission of Notice of Default and Election to Sell Under Deed of Trust | El Dorado County | March 4, 2011 | DICHIARA, CASTLE, KIRKPATRICK, PEZZI, ROMANO |

All in violation of Title 18, United States Code, Sections 2 and 493.

COUNTS SEVENTEEN THROUGH THIRTY-NINE : [18 U.S.C. §§ 1344(1) – Bank Fraud]

The Grand Jury further charges:

JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE,
REMUS ALAN KIRKPATRICK,
GEORGE B. LARSEN, and
LARRY TODT,

defendants herein, as follows:

81.    The allegations set forth in Count One at Paragraphs 1 through 14 and Paragraphs 16 through 40 are incorporated by reference as though set forth herein.

82.    The defendants named and identified in each count below, on the date specified below, in the State and Eastern District of California and elsewhere, did knowingly execute a material scheme to defraud at least one financial institution, with the intent to deceive and cheat the financial institution.

83.    The purpose of the scheme was to extinguish the secured interest owned by the financial institutions listed below on the borrower's property listed below, by recording false and fraudulent deeds of reconveyance at the county recorder's office purportedly on behalf of the financial institution to purportedly reconvey the financial institution's secured interest in the borrower's property without authority and permission to do so:

///

///

///

///

| Count | Borrower's Property | Secured Interest/Loan Amount | Financial Institution | Place and Approximate Date of Recording of Deed of Reconveyance | Defendant(s) |
|---|---|---|---|---|---|
| 17 | 319 Marsalla Drive, Folsom, California | $311,500 | World Savings Bank/Wells Fargo | Sacramento County, 2/15/11 | KIRKPATRICK, CASTLE, DICHIARA |
| 18 | 319 Marsalla Drive, Folsom, California | $20,000 | World Savings Bank/Wells Fargo | Sacramento County, 3/1/11 | KIRKPATRICK, CASTLE, DICHIARA |
| 19 | 1928 Sansone Drive, Santa Rosa, California | $308,000 | Bank of America | Sonoma County, 10/1/10 | DICHIARA, CASTLE, LARSEN |
| 20 | 1928 Sansone Drive, Santa Rosa, California | $77,000 | JP Morgan Chase | Sonoma County, 10/1/10 | DICHIARA, CASTLE, LARSEN |
| 21 | 6303 Green Garden Drive, Bakersfield, California | $300,000 | M&T Mortgage/Bank of America | Kern County, 10/4/10 | KIRKPATRICK, DICHIARA, CASTLE |
| 22 | 6303 Green Garden Drive, Bakersfield, California | $95,000 | RBS Citizens/Charter One Bank | Kern County, 9/30/10 | KIRKPATRICK, DICHIARA, CASTLE |
| 23 | 564 Stone Drive, Novato, California | $767,200 | Bank of America | Marin County, 2/18/11 | LARSEN, DICHIARA, CASTLE |
| 24 | 564 Stone Drive, Novato, California | $100,000 | Citibank | Marin County, 2/18/11 | LARSEN, DICHIARA, CASTLE |
| 25 | 4137 Loch Dane Court, Antelope, California | $360,000 | GMAC/SCME Mortgage Bankers/Aurora Loan Services | Sacramento County, 4/22/10 | CASTLE, DICHIARA |
| 26 | 1420 Roaring Camp Court, Olivehurst, California | $275,000 | Fidelity Home Mortgage/Bank of America | Yuba County, 12/22/10 | CASTLE, DICHIARA |

| 27 | 3182 Shawnee Court, Cameron Park, California | $314,625 | Wells Fargo | El Dorado County, 12/3/10 | DICHIARA, KIRKPATRICK |
|---|---|---|---|---|---|
| 28 | 3182 Shawnee Court, Cameron Park, California | $104,875 | Wells Fargo | El Dorado County, 12/2/10 | DICHIARA, KIRKPATRICK |
| 29 | 7233 Cromwell Way, Sacramento, California | $301,500 | Encore Credit/Chase Bank | Sacramento County, 10/14/10 | CASTLE, DICHIARA, KIRKPATRICK |
| 30 | 7233 Cromwell Way, Sacramento, California | $59,000 | Liberty American Mortgage/HSBC Bank | Sacramento County, 10/15/10 | CASTLE, DICHIARA, KIRKPATRICK |
| 31 | 28432 Avenida Placida, San Juan Capistrano, California | $999,000 | JP Morgan Chase (formerly Washington Mutual) | Orange County, 4/28/10 | TODT, CASTLE, DICHIARA |
| 32 | 21029 Justco Lane, Castro Valley, California | $528,000 | SCME Mortgage Bankers | Alameda County, 3/25/11 | LARSEN, DICHIARA, CASTLE |
| 33 | 60 Canyon Drive, Fairfax, California | $574,000 | Deutsche Bank/ PNC Bank | Marin County, 3/22/11 | LARSEN, CASTLE, DICHIARA |
| 34 | 7593 Almondwood Avenue, Citrus Heights, California | $240,500 | JP Morgan Chase | Sacramento County, 10/20/10 | DICHIARA, KIRKPATRICK, CASTLE |
| 35 | 3765 Northcrest Court, Simi Valley, California | $444,000 | United Capital Funding/Bank of America | Ventura County, 1/19/11 | CASTLE, DICHIARA |

| 36 | 3765 Northcrest Court, Simi Valley, California | $27,750 | Bank of America | Ventura County, 1/19/11 | CASTLE, DICHIARA |
|---|---|---|---|---|---|
| 37 | 5479 Dunlay Drive, Sacramento, California | $396,000 | Deutsche Bank/Bank of America/ Countrywide | Sacramento County, 9/21/10 | CASTLE, DICHIARA, KIRKPATRICK |
| 38 | 154 Brook Court, Branson, Missouri | $161,029 | JP Morgan Chase/First Choice Funding | Taney County, 1/18/11 | DICHIARA, CASTLE, KIRKPATRICK |
| 39 | 1794 Kodiak Circle, Reno, Nevada | $452,800 | World Savings/Wachovia | Washoe County, 5/20/11 | KIRKPATRICK, DICHIARA, CASTLE |

All in violation of Title 18, United States Code, Sections 2 and 1344(1).

COUNTS FORTY THROUGH FORTY TWO: [18 U.S.C. § 1957 – Transactions in Criminally Derived Property]

The Grand Jury further charges:

JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE, and
REMUS ALAN KIRKPATRICK,

defendants herein, as follows:

84.     The allegations set forth in Count One at Paragraphs 1 through 14 and Paragraphs 16 through 40 are incorporated by reference as though set forth herein.

85.     On or about the dates set forth below, in the State and Eastern District of California, each defendant identified below, did knowingly engage in the corresponding monetary transaction set forth below, each of which was by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity:

///

///

| Count | Property | Monetary Transaction | Defendant(s) |
|-------|----------|---------------------|--------------|
| 40 | 1794 Kodiak Circle, Reno, Nevada | $12,500 cash withdrawal from Penn Valley Bank of America bank account # ....3452, on or about June 22, 2011 | DICHIARA |
| 41 | 1794 Kodiak Circle, Reno, Nevada | Purchase of $100,000 Bank of America cashier's check #432395480 on or about June 16, 2011 | KIRKPATRICK |
| 42 | 21029 Justco Lane, Castro Valley, California | Purchase of $20,000 Bank of America cashier's check #432010121 payable to J. Christopher Castle Irrevocable Trust, on or about June 14, 2011 | CASTLE |

All in violation of Title 18, United States Code, Sections 2 and 1957.

FORFEITURE ALLEGATION: [18 U.S.C. § 982(a)(1), (a)(2)(A), 18 U.S.C. § 492 and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.      Upon conviction of one or more of the offenses alleged in Count One and Counts Seventeen through Thirty-Nine of this Indictment, defendants JOHN MICHAEL DICHIARA, JAMES CHRISTOPHER CASTLE,REMUS ALAN KIRKPATRICK,LAURA MARIE PEZZI,GEORGE B. LARSEN,LARRY TODT, and MICHAEL ROMANO shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or derived from proceeds obtained directly or indirectly, as a result of said violations, including, but not limited to, the following:

        a)      A sum of money equal to the amount of proceeds obtained directly or indirectly, as a result of such offenses, for which defendants are convicted.

2.      Upon conviction of one or more of the offenses alleged in Counts Two through Sixteen of this Indictment, defendants JOHN MICHAEL DICHIARA, JAMES CHRISTOPHER CASTLE,REMUS ALAN KIRKPATRICK, and LAURA MARIE PEZZI, and MICHAEL ROMANO shall forfeit to the United States pursuant to 18 U.S.C. § 492 and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to, a sum of money equal to the total of money involved in the offenses, for which the defendant is convicted.

3.     Upon conviction of the offenses alleged in Counts Thirty-Seven through Thirty-Nine of this Indictment, defendants JOHN MICHAEL DICHIARA, JAMES CHRISTOPHER CASTLE, and REMUS ALAN KIRKPATRICK shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such violation, and any property traceable to such property, including but not limited to the following:

a.     A sum of money equal to the amount of money involved in the offense, for which defendants are convicted.

4.     If any property subject to forfeiture, as a result of the offenses alleged in Count One through Forty Two of this Indictment, for which defendants are convicted:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

**/s/ Signature on file w/AUSA**

FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

INDICTMENT                                22

*No.* _2:15 - CR - 0 1 9 0 GEB_

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE,
REMUS ALAN KIRKPATRICK,
LAURA MARIE PEZZI,
GEORGE B. LARSEN,
LARRY TODT, and
MICHAEL ROMANO,

*Bench warrants for each defendant*

---

## I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 371 - Conspiracy; 18 U.S.C. § 493 – Bonds and Obligations of Certain Lending Agencies (15 Counts); 18 U.S.C. § 1344(1) – Bank Fraud (23 Counts); 18 U.S.C. § 1957 – Monetary Transactions in Criminally Derived Property (3 Counts); and 18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 18 U.S.C. § 492 and 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

*A true bill,* /S/ Signature on File w/ AUSA
_____
*Foreman.*

*Filed in open court this* __10th__ _____ *day*

*of* _September_____, *A.D. 20* 1 5 ___

_____
*Clerk.*

*Bail, $* _ NO BAIL WARRANT PENDING HEARING – All Defendants ↑

GPO 863 525

2: 1 5 - CR - 0 1 9 0 GEB

**United States v. Dichiara, et al.**
**Penalties for Indictment**

**Defendants**
JOHN MICHAEL DICHIARA,
JAMES CHRISTOPHER CASTLE,
REMUS ALAN KIRKPATRICK,
LAURA MARIE PEZZI,
GEORGE B. LARSEN,
LARRY TODT,
MICHAEL ROMANO

**COUNT 1:**        **ALL DEFENDANTS**

VIOLATION:        18 U.S.C. 371 - Conspiracy

PENALTIES:        Maximum penalty of up to five years; or
                  Fine of up to $250,000; or both fine and imprisonment
                  Supervised release of 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 2-16:**    **DICHIARA, CASTLE, KIRKPATRICK, PEZZI, ROMANO**

VIOLATION:        18 U.S.C. § 493, 2 – Bonds and Obligations of Certain Lending Agencies

PENALTIES:        Maximum penalty of up to ten years; or
                  Fine of up to $250,000; or both fine and imprisonment
                  Supervised release of 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 17-39:**   **DICHIARA, CASTLE, KIRKPATRICK, TODT, LARSEN**

VIOLATION:        18 U.S.C. § 1344(1) – Bank Fraud

PENALTIES:        Maximum penalty of up to thirty years; or
                  Fine of up to $1,000,000; or both fine and imprisonment
                  Supervised release of 5 years

SPECIAL ASSESSMENT:   $100 (mandatory on each count)

**COUNTS 40-42:**   **DICHIARA, CASTLE, KIRKPATRICK**

VIOLATION:        18 U.S.C. § 1957 – Transactions in Criminally Derived Property

PENALTIES: Maximum penalty of up to ten years; or
Fine of $250,000; or fine of not more than twice the amount of the
criminally derived property involved in the transaction; or both fine and
imprisonment
Supervised release of 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## **FORFEITURE ALLEGATION:**  **all Defendants**

VIOLATION: 18 U.S.C. §§ 982(A)(1)28(A)(2), 9821(A)(21)(CA), 18.U.S.C. § 492
AND 28 U.S.C. § 2461(C)

PENALTIES: As stated in the charging document